# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

IN THE MATTER OF COOPER
MARINE & TIMBERLANDS
CORPORATION,        No. 3:15CV00170 JLH (LEAD)
as Owner *Pro Hac Vice* and Operator;
and GATX THIRD AIRCRAFT, LLC,
as Owner of the BARGE CMT 123,
Official No. 1067600

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ROBERT L. COLEMAN, Special Administrator     PLAINTIFF
for the Estate of Nicolas Perez Hernandez, and
his Surviving Heirs and Dependents

v.            NO. 3:15CV00225 JLH

COOPER MARINE & TIMBERLANDS
CORPORATION, *et al*.     DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

KASSANDRA NIEVES, Individually and as     PLAINTIFF
Personal Representative of the Estate of Juan Nieves
and his Surviving Heirs and Dependents

v.            NO. 3:15CV00350 JLH

COOPER MARINE & TIMBERLANDS
CORPORATION, *et al*.     DEFENDANTS

## OPINION AND ORDER

These two wrongful death cases have been consolidated for discovery because the decedents—Juan Nieves and Nicolas Perez Hernandez—were killed in the same accident while unloading steel coils from a barge as workers for Kinder Morgan Bulk Terminals, Inc. In addition to three Kinder Morgan entities, the decedents' estates have sued the manufacturer of the steel coils, the company that loaded the steel coils onto the barge, and the company whose tug took custody of the barges and delivered them to a Kinder Morgan Marine Services fleet terminal in Arkansas. The defendants other than the Kinder Morgan entities have asserted third-party claims against two

staffing agencies that supplied Nieves and Hernandez to Kinder Morgan. The staffing agencies have moved for summary judgment. For reasons that will be explained, the motions for summary judgment filed by the staffing agencies are granted.

## I. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

## II. UNDISPUTED FACTS

On June 15, 2010, Kinder Morgan[1] contacted Temps Plus, Inc., and requested that it supply a worker as a cutting torch operator. Juan Nieves was then sent by Temps Plus to fulfill that request. Nieves had applied for employment with Temps Plus on December 7, 2009, and had stated in his application that he had experience in welding. Similarly, on May 21, 2012, Kinder Morgan[2] contacted Dawson Employment Service, Inc., and requested that it provide a cutting torch operator. Both Nieves and Hernandez remained on the payrolls of the staffing agencies while continuing to work for Kinder Morgan until the incident that caused their deaths on April 8, 2014.

Kinder Morgan Energy Partners, L.P., acting for itself and its affiliates and subsidiaries, contracted with the staffing agencies using a form contract that it prepared and sent to the agencies. The contracts provided that the staffing agencies would provide temporary personnel to Kinder Morgan with compensation to the staffing agencies based on a schedule of values pertaining to the work to be completed or accomplished. Kinder Morgan's agreement with Temps Plus provided for Kinder Morgan to pay Temps Plus at markup rate of 38% for industrial positions and 44% for longshore and harbor positions. Dawson charged Kinder Morgan a markup of 40% for industrial workers and 45% for longshore and harbor workers. Both staffing agencies charged a higher rate for longshore and harbor workers because of the increased cost in longshore and harbor workers' compensation coverage. It was the duty of the hiring manager, who was the contact person at Kinder Morgan for the staffing agencies, to provide the staffing agencies with specific labor

---

[1] The documents do not specify which Kinder Morgan entity made this request.

[2] The documents do not specify which Kinder Morgan entity made this request.

classifications pertaining to the work to be completed or accomplished. Those classifications could be revised by mutual agreement between Kinder Morgan and the staffing agencies.

From June of 2010 until Nieves died on April 8, 2014, Temps Plus charged Kinder Morgan at the 38% markup rate. Temps Plus was never informed by Kinder Morgan that Nieves was working on a barge or in any other capacity that required coverage under the Longshore and Harbor Workers' Compensation Act. Some timesheets submitted by Kinder Morgan referenced a "coil dock" location, but, nevertheless, Kinder Morgan never informed Temps Plus that Nieves was working in a job assignment that required Longshore and Harbor Workers' Compensation Act coverage. Dawson, in contrast, has a record showing that effective December 23, 2013, Hernandez's classification was changed, and he was moved to a position that required coverage under the Longshore and Harbor Workers' Compensation Act. Dawson did not, however, know exactly what Hernandez was doing—it did not know that he was unloading barges.

The contracts between Kinder Morgan and the staffing agencies provided that no worker placed by the staffing agencies with Kinder Morgan would be deemed an employee of Kinder Morgan. The staffing agencies paid those workers based on timesheets submitted by Kinder Morgan. The staffing agencies provided workers' compensation insurance and, if applicable, insurance coverage pursuant to the Longshore and Harbor Workers' Compensation Act, as well as other forms of liability insurance. The contracts also provided for the staffing agencies to provide the workers some training with respect to safety policies and procedures. Work was to be performed by the employees as instructed by Kinder Morgan's hiring manager. The employees were not permitted to deviate from the work assignment without authorization from the hiring manager.

4

The steel coils that were being unloaded on April 8, 2014, weighed more than thirty tons each. Severstal Columbus, LLC, now known as Steel Dynamics Columbus, LLC, manufactured them. Logistic Services, Inc., loaded them on two barges in Columbus, Mississippi. Cooper Marine & Timberlands Corporation took custody of the barges and tugged them upriver to the Kinder Morgan terminal. Kinder Morgan Bulk Terminals received the coils pursuant to a contract with its customer, IPSCO Tubulars, Inc. The first barge was unloaded without incident. At some point while the second barge was being unloaded, one or more of the coils rolled to a side, which caused the barge to list and then to sink.

The plaintiffs allege that Steel Dynamics, Logistic Services, and Cooper Marine were negligent and that their negligence caused the accident in which Nieves and Hernandez were killed. These three defendants have filed third-party complaints against Dawson and Temps Plus pursuant to Federal Rules of Civil Procedure 9(h) and 14(c). The third-party complaints allege that the staffing agencies had a duty to train Hernandez and Nieves properly and to ensure that they were fully qualified to do the work that they were doing at the time of the incident but that they failed to fulfill that duty. The third-party complaints seek indemnity or contribution from Dawson and Temps Plus for any damages Steel Dynamics, Logistic Services, or Cooper Marine may be required to pay to the plaintiffs.

Dawson and Temps Plus have filed substantially similar motions for summary judgment. They first argue that they are immune from liability as employers of Nieves and Hernandez under the Longshore and Harbor Workers' Compensation Act. In the alternative, they argue that they had no common-law duty to train Nieves and Hernandez.

5

## III. LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT

The Longshore and Harbor Workers' Compensation Act "is a no-fault federal compensation scheme designed to give protection to injured maritime workers while at the same time affording employers some degree of predictability with regard to those workers' recoveries." *White v. Bethlehem Steel Corp.*, 222 F.3d 146, 148 (4th Cir. 2000). It is a federal workmen's compensation statute that provides compensation to certain employees for disability or death resulting from an injury occurring on the navigable waters of the United States and certain adjoining facilities. *Peter v. Hess Oil Virgin Islands Corp.*, 903 F.2d 935, 938 (3rd Cir. 1990); 33 U.S.C. § 903(a). As with state workers' compensation laws, after which the Longshore and Harbor Workers' Compensation Act is modeled, the employer[3] is required to provide compensation for disability or death irrespective of fault. 33 U.S.C. § 904. In return, again as is the case with the corresponding state laws, the employer is immune from tort liability. *Id*. § 905(a). When an employer has fulfilled its obligations under the act by paying benefits to the injured employee, "further tort-based contribution from the employer is foreclosed." *Triguero v. Consolidated Rail Corp.*, 932 F.2d 95, 98 (2nd Cir. 1991). That immunity extends to third-party claims for contribution. *Id*.

Here, Temps Plus and Dawson argue that they are entitled to immunity under the Act because they employed Nieves and Hernandez, paid their salaries and benefits, and obtained the insurance coverage that provided compensation under the Act. Logistic Services and Steel

---

[3] The act defines "employer" as "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 902(4).

Dynamics disagree.[4] They argue the Act permits only one immune employer for each employee. In this case, they contend, genuine disputes of material fact remain as to whether Kinder Morgan was the employer entitled to immunity under the Act or whether the staffing agencies were. Kinder Morgan Bulk Terminals previously filed a motion for summary judgment asserting as a matter of law that it was a borrowing employer entitled to immunity under the Act. The Court denied that motion because Kinder Morgan Bulk Terminals failed to show that there was no genuine dispute of material fact as to whether it was a borrowing employer. *See* Document #114. Steel Dynamics and Logistic Services argue that since the Act permits only one immune employer for an employee, and since the Court has previously determined that a genuine dispute of material fact exists as to whether Kinder Morgan Bulk Terminals was a borrowing employer, the motions for summary judgment filed by Temps Plus and Dawson also must be denied. As to the staffing agencies' alternative argument, Steel Dynamics and Logistic Services contend that the contracts between Kinder Morgan and the staffing agencies obligated the staffing agencies to train Nieves and Hernandez, and that those contractual obligations give rise to a common-law duty that was breached.

Neither Steel Dynamics nor Logistic Services has cited a case holding that there can be only one immune employer under the Longshore and Harbor Workers' Compensation Act, and the Court has found none. The common-law rule acknowledges that an employee may have two masters if the service to one does not involve abandonment of the other. *See* Restatement (Second) of Agency § 226; *Minkota Power Coop., Inc. v. Manitowez Co., Inc.*, 669 F.2d 525, 531 (8th Cir. 1982);

---

[4] Although Cooper Marine filed a third-party complaint against Temps Plus and Dawson, it now argues, "[s]ince immunity under the LHWCA extends to only one employer, Temps Plus should be held by the Court to be the employer of Nieves entitled to statutory immunity and Dawson should be held by the Court to be the employer of Perez [Hernandez] entitled to statutory immunity." Document #139 at 14.

*Transport Ins. Co. v. Mfgrs. Cas. Ins. Co.*, 226 F. Supp. 251, 255 (E.D. Ark. 1964). In the state workers' compensation context, the majority rule is that a temporary employee is an employee of both the staffing agency and its customer company for whom the work is done. *Goodman v. Sioux Steel Co.*, 475 N.W.2d 563, 564 (S.D. 1991); *see also Kidder v. Miller-Davis Co.*, 564 N.W.2d 872, 880 (Mich. 1997); *Coca-Cola Co. v. Nicks*, 450 S.E.2d 838, 839 (Ga. App. 1994); *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 759, 840 S.W.2d 177, 178 (1992). The borrowed servant doctrine applies in the federal context much as it does in the state context. *Hess Oil*, 903 F.2d at 939. Since the majority of states hold that two persons may be employers under the workers' compensation laws, the same can be true under the Longshore and Harbor Workers' Compensation Act. The Fifth Circuit has held that under the Jones Act a staffing agency that provided an employee to an oil company remained an employer under the Jones Act even though the employee was the borrowed servant of the oil company. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975). The court explained:

> In any commonsense meaning of the term, Labor Services was Spinks' employer. He was hired and paid by Labor Services. That company, not Chevron, withheld taxes and Social Security payments from his salary and forwarded them to the government as required of an employer by law.

*Id*. The Fifth Circuit has expressly held that an employee may have two employers under the Longshore and Harbor Workers' Compensation Act:

> Congress designed the LHWCA to provide injured employees with certain and absolute benefits instead of potential common-law benefits obtainable only via tort actions against the employer. This structure is best served by a rule holding dual employers jointly and severally liable for compensable injuries incurred by employees. If the rule were otherwise, an employee's compensation would undoubtedly be delayed in many instances while the employers, not unreasonably, dissected his actions to determine for whom the employee was working at the exact moment the accident occurred. Holding dual employers jointly and severally liable

8

> guarantees that an injured employee will not go without compensation benefits while the employers battle to determine which is liable.

*Oilfield Safety & Mach. Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248, 1256 (5th Cir. 1980) (citation omitted). Although this case relates to the dual employers doctrine rather than the borrowed servant doctrine, it refutes the argument by Steel Dynamics and Logistic Services that an employee can have only one employer under the Act. The Benefits Review Board has held that both a staffing agency and the business to whom the agency sent an employee were employers who were immune under 33 U.S.C. § 933(g). *Redmond v. Crawford & Co.*, BRB Nos. 97-1117 and 97-1117A, 1998 WL 377787 (June 15, 1998). Similarly, the District of Rhode Island held that under 33 U.S.C. § 933(a) a staffing agency "is not an independent third party." *Guillory v. Gukutu*, 534 F. Supp. 2d 267, 274 (D.R.I. 2008). The court explained:

> The borrowed servant doctrine, as applied under the LHWCA, effectively renders the general employer the master of the borrowed employee for liability purposes, as it is the general employer who controls the work, and working conditions, of its borrowed employee. To assign to a nominal employer any independent duty to protect third parties at the work site would give that employer a degree of authority, control, and potential culpability over workplace occurrences that the borrowed servant doctrine, as it has been established specifically under the LHWCA, serves to eliminate.

*Id*. at 275; *see also Ates v. B&D Contracting, Inc.*, No. 1:10CV272-HSO-JMR, 2011 WL 5507420 at *7 (S.D. Miss. Nov. 9, 2011). Although *Guillory*, like *Redmond*, concerned immunity under section 933(a) rather than section 905, the Act's definition of "employer" governs both sections.

In short, no case has expressly held that a longshore and harbor worker can have only one immune employer. The common-law rule, the case law under the majority of the state workers' compensation laws, cases interpreting other federal statutes, and cases interpreting section 933(a) of the Act held that an employee can have two employers. Furthermore, the logic of *Guillory*

9

applies equally to section 905—to assign a staffing agency a duty to give job-specific training to longshore workers would give them a degree of authority, control, and potential culpability over workplace occurrences that cannot be justified. Likewise, the holding in *Oilfield Safety* that dual employers may both be liable for the compensation required by section 904 requires that both be immune under section 905.

The argument by Steel Dynamics and Logistic Services that this Court's prior opinion on the issue of whether Kinder Morgan was a borrowing employer controls with respect to Temps Plus and Dawson is misplaced. That argument overlooks an important distinction between Kinder Morgan and the staffing agencies. Kinder Morgan entered into contracts with the staffing agencies that expressly provided that it was not the employer of the workers that the staffing agencies sent. In the face of that contractual provision, Kinder Morgan nonetheless argued that there was no genuine dispute as to any material fact and that it was, as a matter of law, an employer of Nieves and Hernandez. That was a tough bar to chin. The staffing agencies do not need to chin that bar. Each staffing agency agreed with Kinder Morgan and the workers that it was the employer of the workers that it sent to Kinder Morgan. Furthermore, each contractually agreed to pay the workers' salaries and benefits and to purchase insurance to provide compensation under the state workers' compensation law and the Longshore and Harbor Workers' Compensation Act. Unlike Kinder Morgan, the staffing agencies have not contractually denied being the decedents' employers while claiming to be their employers in order to obtain immunity. Rather, the staffing agencies agreed all along that they were the employers, and they have done specific acts that employers are required by law to do. Now they argue nothing more than that they are entitled to the immunity that the law affords to employers.

The cases upon which this Court relied in analyzing whether Kinder Morgan was, as a matter of law, a borrowing employer of the decedents do not apply to Temps Plus and Dawson. Temps Plus and Dawson were not borrowing employers and do not claim to have been. Neither Steel Dynamics nor Logistic Services has cited any case, nor has the Court found one, holding that a staffing agency that sends an employee to work for one of its customers is not an employer under the Longshore and Harbor Workers' Compensation Act or any corresponding state laws.

The Act provides that every employer must secure the payment to his employees of the compensation payable under the Act. 33 U.S.C. § 904. An employer's liability to a longshore or harbor worker ends there. *Id.* at § 905. No further tort liability directly to the employer or indirectly through contribution to third parties can be imposed. *Triguero*, 932 F.2d at 98. Here, Temps Plus employed Nieves and provided compensation as required by section 904. Dawson did the same for Hernandez. Temps Plus and Dawson are therefore immune from tort liability. They are entitled to summary judgment.

## IV. COMMON-LAW DUTY TO TRAIN

The staffing agencies also prevail under their alternative argument that they owed no duty to train Nieves and Hernandez on how to unload steel coils from barges and ensure that they were qualified to do so. Whether a duty is owed is a question of law. *Williams v. TESCO Servs., Inc.*, 789 F.3d 968, 973 (8th Cir. 2013). It is undisputed that when the fatal accident occurred, Nieves and Hernandez were performing work for Kinder Morgan Bulk Terminals. The Court has already so stated. Document #114 at 11. It is also undisputed that Kinder Morgan directed and supervised them in their day-to-day tasks. *Id.* at 10. Steel Dynamics and Logistic Services contend, however, that the contracts between the staffing agencies and Kinder Morgan imposed on the staffing agencies

11

a duty to train Nieves and Hernandez. They cite several provisions in the contract, most importantly the provisions under section 10.0, which require the staffing agency to ensure that persons provided as workers have the necessary training, safety equipment, and safety instruction to accomplish the work assignment and to take all necessary precautions toward all safety issues and promote safe work practices. Those provisions, and the others upon which Steel Dynamics and Logistic Services rely, must be construed in light of the nature of the relationship between the staffing agencies and Kinder Morgan. Paragraph 3.8 of the contract provides that the staffing agencies "shall not undertake any responsibilities or duties other than the provision of temporary personnel to [Kinder Morgan]."

On the date of the accident, Nieves and Hernandez were unloading steel coils from a barge. They were working for Kinder Morgan Bulk Terminals. The undisputed evidence establishes that Kinder Morgan Bulk Terminals assigned them to that work and was supervising them when they did it. It is undisputed that Kinder Morgan Bulk Terminals provided any training in unloading barges that they had or that Kinder Morgan deemed that they needed. Kinder Morgan Bulk Terminals owned the dock and is in the business of loading and unloading barges. The staffing agencies are not in that business. They are brokers who act as intermediaries between workers seeking employment and employers seeking workers. They also provide human resources services with respect to the employees that they provide to their customers. It would make no sense for Kinder Morgan Bulk Terminals—which owns a dock and is in the business of loading and unloading barges—to contract with a staffing agency to train workers how to load and unload barges safely. A contract must be afforded a reasonable interpretation. *Barnett v. Maryland Cas. Co.*, 253 Ark. 1103, 1104, 490 S.W.2d 784 (1973). To expect a staffing agency to train employees on how to

12

unload thirty-ton steel coils from a barge would be unreasonable. The Court will not construe the contracts between Kinder Morgan and the staffing agencies to reach such an unreasonable conclusion.

Nor did the parties to the contract construe them in that manner. A corporate representative of Kinder Morgan Bulk Terminals has testified under oath that section 10.0 of the contracts related to safety and environmental requirements; that there was no person from the staffing agencies supervising or managing the work at the terminal where Nieves and Hernandez were offloading cargo; that all of the management and supervision of the work at the terminal on that date was done by Kinder Morgan Bulk Terminals personnel; and that Kinder Morgan Bulk Terminals provided the actual supervision and training with respect to the work tasks of unloading cargo from a barge. Testimony from both staffing agencies confirms the testimony of Kinder Morgan Bulk Terminals' representative.

The contracts between the staffing agencies and Kinder Morgan did not impose on the staffing agencies the duty to train Nieves and Hernandez on how to unload steel coils from barges. Nor does any other rule of law.

## V. KINDER MORGAN

Resolving the motions for summary judgment filed by the staffing agencies has required the Court to review the entire record and reconsider the ruling on the motion for summary judgment filed by the Kinder Morgan entities. In doing so, the Court concludes that it erred in its previous ruling when it denied the motion for summary judgment filed on behalf of Kinder Morgan Energy Partners. As Kinder Morgan Energy Partners argued, it played no role in unloading the barges, and

its only connection to the accident was the contracts between itself and Temps Plus and Dawson. Summary judgment is therefore granted in favor of Kinder Morgan Energy Partners.

## CONCLUSION

For the reasons stated, the motions for summary judgment filed by Temps Plus, Inc., and Dawson Employment Service, Inc., are GRANTED. Documents #121 and #124. The third-party complaints filed by Steel Dynamics Columbus, LLC, Logistic Services, Inc., and Cooper Marine & Timberlands Corporation against Temps Plus, Inc., and Dawson Employment Service, Inc., are dismissed with prejudice. Summary judgment is also entered in favor of Kinder Morgan Energy Partners, L.P.

IT IS SO ORDERED this 8th day of June 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE